IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| WESTERN FARMERS ELECTRIC COOPERATIVE, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Case No. CIV-15-864-D |
|  | ) |  |
| STERLING PLANET, INC., | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**O R D E R**

Before the Court is Defendant Sterling Planet, Inc.'s Motion to Dismiss for Lack of Jurisdiction [Doc. No. 1-4], filed prior to removing the case to federal court. Defendant, a citizen of Georgia, challenges the existence of personal jurisdiction over it for a suit in Oklahoma and the sufficiency of service of process under Okla. Stat. tit. 12, § 2004. Plaintiff has opposed the Motion [Doc. No. 5], and Defendant has filed an authorized reply brief [Doc. No. 8]. Because the case is now in federal court, the Motion is governed by Fed. R. Civ. P. 12(b)(2) and (5). *See* Fed. R. Civ. P. 81(c)(1).[1]

Plaintiff commenced this action in the District Court of Caddo County, Oklahoma, on July 7, 2015, asserting a claim that Defendant breached a written contract regarding the sale of renewable energy certificates created by a wind energy project in western Oklahoma.

---

[1] Although Defendant did not comply with LCvR81.2(b) regarding motions pending in state court at the time of removal, the Court excuses Defendant's non-compliance because a copy of the Motion was provided with the Notice of Removal and, within the time period for Defendant to answer or respond to Plaintiff's petition pursuant to Fed. R. Civ. P. 81(c)(2), Plaintiff filed its response brief. The Motion is now fully briefed, and the record is clear that Defendant has not waived the alleged jurisdictional defect. The parties will be expected to follow the Court's local rules in future filings.

Plaintiff brings suit under a purchase agreement dated April 30, 2014, by which it agreed to sell and Defendant agreed to buy for resale to retail and wholesale customers, a quantity of the certificates – representing environmental attributes arising from the generation of electricity using a renewable energy source – at a certain unit rate according to a payment and delivery schedule included in the contract. *See* Pet., Ex. A [Doc. No. 1-2], pp.5-10 (ECF numbering), Renewable Energy Certificate Purchase Agreement (hereafter, the "Agreement").[2] Defendant received a copy of the petition and summons by mail in Georgia on July 13, 2015, and filed a timely Notice of Removal on August 7, 2015, invoking federal jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332.[3]

Defendant moves for dismissal on two grounds: 1) personal jurisdiction does not exist because it is a nonresident defendant who lacks sufficient minimum contacts with the State of Oklahoma necessary for an exercise of jurisdiction here; and 2) Plaintiff's service of process by mail to Georgia was insufficient. Regarding the second ground, the only insufficiency argued in Defendant's supporting briefs is that extra-territorial service authorized by Okla. Stat. tit. 12, § 2004(E) must be consistent with constitutional limits imposed by § 2004(F). Because an exercise of personal jurisdiction over a foreign citizen

---

[2] Plaintiff submits a second copy of the final Agreement, with unit prices and volumes redacted, as an attachment to its response brief. *See* Pl.'s Resp. Br., Ex. 6 [Doc. No. 5-6]. For ease of reference, this copy will be cited herein.

[3] Plaintiff is a rural electric cooperative corporation organized under Okla. Stat. tit. 18, § 437.1 *et seq.*, with its principal place of business in Anadarko, Oklahoma; Defendant is a Georgia corporation with its principal place of business in Norcross, Georgia; and the amount in controversy is $449,945.10.

2

must satisfy the same limits, Defendant's two grounds for dismissal involve the same legal inquiry and analysis.

**Motion to Dismiss**

Defendant alleges a lack of personal jurisdiction because it has not had "continuous and systematic contacts with Oklahoma" that might establish general personal jurisdiction and Plaintiff's cause of action "has no direct connection with [Defendant's] activities within the state." *See* Def.'s Mot. Dism. [Doc. No. 1-4], pp. 7, 11; Def.'s Reply Br. [Doc. No. 8], pp.3-4, 9. In support of its arguments, Defendant submits the affidavit of a corporate officer stating that Defendant is not licensed to do business or doing business in Oklahoma; does not own or control any property or assets here; does not maintain an office, employees, agents, accounts, or phone listings within the state; does not directly advertise or regularly solicit business in Oklahoma; does not employ salespersons who are based in or regularly travel to Oklahoma; does not pay Oklahoma taxes; and does not generate a substantial percentage of its revenue from Oklahoma customers.[4]

**Standard of Decision**

Plaintiff "bears the burden of establishing personal jurisdiction over defendant." *Intercon, Inc. v. Bell Atl. Internet Sol.*, 205 F.3d 1244, 1247 (10th Cir. 2000); *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998). Where, as here, the issue is

---

[4] In its reply brief, Defendant makes factual arguments regarding Plaintiff's member cooperatives, service territories, power generation facilities, and transmission lines. Although the purpose of these arguments is not entirely clear, they are unsupported by any evidentiary materials or citation of publicly available records. Therefore, in accordance with the standard of decision, *infra*, they are disregarded.

3

presented for decision without an evidentiary hearing on the basis of affidavits and other written materials, Plaintiff "need only make a prima facie showing that jurisdiction exists." *Intercon*, 205 F.3d at 1247 (internal quotation omitted); *see Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010); *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056-57 (10th Cir. 2008). At this stage, the Court must accept uncontroverted factual allegations as true and resolve all factual disputes in Plaintiff's favor. *See Employers*, 618 F.3d at 1159; *AST Sports*, 514 F.3d at 1056; *Intercon*, 205 F.3d at 1247. To defeat Plaintiff's jurisdictional showing, Defendant must present a "compelling case" that other considerations render jurisdiction unreasonable. *See OMI Holdings*, 149 F.3d at 1091; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985); *AST Sports*, 514 F.3d at 1059.

To establish personal jurisdiction of a nonresident defendant, "a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Employers*, 618 F.3d at 1159 (internal quotation omitted). Under Oklahoma law, the personal jurisdiction inquiry is simply a federal due process analysis. *Intercon*, 205 F.3d at 1247; *Rambo v. American S. Ins. Co.*, 839 F.2d 1415, 1416 (10th Cir. 1988). The familiar due process standard requires "minimum contacts" between the defendant and the forum state and a finding that the exercise of jurisdiction comports with "'fair play and substantial justice.'" *See Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S.

4

310, 320 (1945)); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 297 (1980); *Intercon*, 205 F.3d at 1247.

## Discussion

### A. Minimum Contacts

#### 1. Legal Standard

The minimum contacts standard may be satisfied by showing general or specific personal jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. ___, 131 S. Ct. 2846, 2851 (2011); *Employers*, 618 F.3d at 1159-60; *AST Sports*, 514 F.3d at 1058; *OMI Holdings*, 149 F.3d at 1091. General jurisdiction refers to a court's power to hear claims against a nonresident defendant whose "affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *See Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014) (quoting *Goodyear*, 131 S. Ct. at 2851) (alteration in *Daimler*). General personal jurisdiction exists where the defendant has maintained "continuous and systematic general business contacts" with the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984); *Employers*, 618 F.3d at 1160 n.5; *OMI Holdings*, 149 F.3d at 1091. In this case, Defendant contends this type of personal jurisdiction is lacking. Plaintiff does not dispute this contention but, instead, relies on the existence of specific jurisdiction.

Specific personal jurisdiction exists where a plaintiff shows that "a 'defendant has "purposefully directed" his activities at residents of the forum . . . *and* the litigation results from alleged injuries that "arise out of or relate to" those activities.'" *Kuenzle v. HTM Sport-*

*Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir. 1996) (quoting *Burger King*, 471 U.S. at 472) (emphasis added in *Kuenzle*); *see Intercon*, 205 F.3d at 1247; *OMI Holdings*, 149 F.3d at 1090-91.[5] To satisfy the first prong, Plaintiff must demonstrate that Defendant "'purposefully directed' its activities at the forum state . . . or 'purposely availed' itself of the privilege of conducting activities or consummating a transaction in the forum state." *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008). Purposeful availment generally requires affirmative conduct by the nonresident defendant that creates a substantial connection to the state; unilateral activity of others is insufficient. *See Burger King*, 471 U.S. at 475; *see also Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1296-97 (10th Cir. 2004); *OMI Holdings*, 149 F.3d at 1092.

As noted by the court of appeals, "[t]he application of [due process] standards to contracts made between citizens of different states is not without difficulty" but is guided by the Supreme Court's opinion in *Burger King*. *See Rainbow Travel Serv., Inc. v. Hilton Hotels Corp.*, 896 F.2d 1233, 1237 (10th Cir. 1990). The Supreme Court in *Burger King* "rejected the notion that personal jurisdiction might turn on 'mechanical' tests . . . or on 'conceptualistic . . . theories of the place of contracting or of performance . . . .'" *Burger King*, 471 U.S. at 478. "In order to assess whether minimum contacts occurred in a contract case, we look at 'prior negotiations and contemplated future consequences, along with the

---

[5] Stated differently: "Under the specific-jurisdiction requirement, a plaintiff satisfies the minimum-contacts standard by showing that (1) the defendant has purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state, and (2) the litigation results from alleged injuries that arise out of or relate to those activities." *Employers*, 618 F.3d at 1160 (internal quotations and citations omitted).

terms of the contract and the parties' actual course of dealing.'" *AST Sports Science, Inc. v. CLF Distrib. Ltd*. 514 F.3d 1054, 1058 (10th Cir. 2008) (quoting *Burger King*, 471 U.S. at 479)). "A contract alone does not subject a nonresident defendant to the jurisdiction of the subject forum," but additional facts that demonstrate the pursuit of an ongoing business relationship will support jurisdiction. *See id*. at 1059.

In this case, Plaintiff's action against Defendant arises from a contract for a series of sales of renewable energy certificates created by a project located solely within Oklahoma. Plaintiff is a rural electric cooperative organized under Oklahoma law with its principal place of business in Oklahoma. The Agreement clearly identifies Plaintiff with an address in Anadarko, Oklahoma, as the seller with "the marketing rights to the environmental attributes to certain renewable energy facilities" described in an attachment, which identifies the Rocky Ridge wind energy project with an address in Hobart, Oklahoma. *See* Agreement [Doc. No. 5-6], ¶ 1 & Table 1. Plaintiff presents evidence of an exchange of email communications between the parties in which they negotiated the unit price for the purchases, and Defendant's representative actively pursued the negotiations in an effort to establish a price that Plaintiff would find acceptable.

Plaintiff submits evidence to show the written contract signed by the parties in April 2014 adopted a form that had previously been negotiated for similar sales agreements between them. The Agreement expressly provided for Oklahoma law to govern the Agreement, its construction, and performance. *See id*., ¶ 12. The Agreement required

Plaintiff to deliver written attestations, which would pass ownership of the certificates to Defendant and satisfy certain reporting requirements, and to prepare and provide invoices according to a specified schedule. *See id*. ¶¶ 3, 11; *see also* Pl.'s Resp. Br., Exs. 9, 13, 16 [Doc. Nos. 5-9, 5-13, 5-16] (attestations executed by Plaintiff in Oklahoma). After the Agreement was partially performed, Defendant requested a revised payment schedule by letter directed to Plaintiff in Oklahoma, which was apparently accepted. *See id*., Ex. 14 [Doc. No. 5-14], Letter from T. Murphy to R. Ross dated Sept. 26, 2014. Defendant subsequently requested a reduction of the unit price in a similar manner. *See id*.; Ex. 18 [Doc. No. 5-18], Letter from A. Marriner to R. Ross dated Nov. 3, 2014. Plaintiff refused, and this lawsuit followed.

Based on these alleged facts, which are taken as true, the Court finds Plaintiff has made a minimally sufficient showing that Defendant purposefully directed its activities at the State of Oklahoma and purposely availed itself of the privilege of conducting purchases in Oklahoma. Plaintiff has shown the subject Agreement, the negotiations and communications concerning it, and the parties' ongoing relationship regarding the sale of renewable energy credits had a meaningful connection to Oklahoma. Defendant knew that Plaintiff's performance of its responsibilities under the Agreement (generating invoices and attestations), as well as the wind energy project's creation of the credits, would be done in Oklahoma. Plaintiff has established that the parties had an ongoing business relationship arising from a series of similar transactions, and utilized a form of written contract previously

negotiated to include a provision for application of Oklahoma law. Defendant expressly solicited Plaintiff, through its agents located in Oklahoma, to enter into the Agreement. Accordingly, Plaintiff's contract with Defendant had a substantial connection to Oklahoma such that specific jurisdiction would exist in Oklahoma for a controversy arising from Defendant's alleged nonperformance of its obligations under the Agreement. Accepting Plaintiff's facts and evidence as true, Defendant purposely directed its purchasing activities at Oklahoma, and this action arises out of and relates to those activities.

For these reasons, the Court finds that Plaintiff has made a *prima facie* showing that specific jurisdiction exists in Oklahoma for its action against Defendant. Therefore, the Court finds sufficient contacts to support the exercise of personal jurisdiction over Defendant in this case.

**B.     Substantial Justice**

"[W]here a defendant who purposefully has directed activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 477 U.S. at 478; *see Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005). Relevant factors include:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Pro Axess*, 428 F.3d at 1279-80; *Intercon*, 205 F.3d at 1249. Here, Defendant presents no facts or arguments relevant to these factors, and otherwise makes no effort to demonstrate facts that would render the Court's exercise of jurisdiction unreasonable. Therefore, the Court finds Defendant has not made the requisite showing.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss for Lack of Jurisdiction [Doc. No. 1-4] is DENIED.

IT IS SO ORDERED this 7th day of November, 2015.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE